**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF ALABAMA**

| | |
|---|---|
| IN RE: | |
| WILSON WILLIAMS, JR. AND MELISSA GRAY, NONFILING CO-DEBTOR; | CHAPTER 13<br>CASE NO. 15-32169 |
| Debtor(s) | |

## MOTION TO LIFT THE AUTOMATIC STAY AND CO-DEBTOR STAY

Comes now Fay Servicing, servicing agent for First Guaranty Mortgage Corporation ("Fay Servicing"), and moves this Court, pursuant to 11 U.S.C. §§ 362 and 1301, for an order lifting the automatic stay and co-debtor stay on certain property located at 2204 Kingsbury Dr., Montgomery, AL 36106 which is currently subject to an interest held by Fay Servicing, and shows unto the Court the following:

1. Fay Servicing is a secured creditor of the above-named Debtor(s) being the holder and owner of a certain note in the original principal amount of $143,355.00, executed by Debtor(s), and payable to the order of Nations Lending Corporation, a Corporation, and is secured by a mortgage on certain real estate located in Montgomery County, Alabama, as evidenced by the attached instruments.

2. Fay Servicing avers that Debtor(s) has/have been in default in the payment of the contractual installments due Fay Servicing, pursuant to the terms of said note, since February, 2016 and thereafter.

3. Fay Servicing holds and/or services the loan on the property referenced in this Motion for Relief. In the event the automatic stay in this case is modified, this case dismisses, and/or the debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Fay Servicing.

WHEREFORE, Fay Servicing respectfully requests that the Court issue an order stating that the automatic stay and co-debtor stay is lifted pursuant to 11 U.S.C. §§ 362 and 1301, and said property be released to Fay Servicing to permit it to liquidate its security and to apply the proceeds to said indebtedness secured thereby, and to such other relief to which it may be entitled.

By: /s/ Evan Eberhardt
Evan Eberhardt
Jauregui & Lindsey, LLC
Attorney for Fay Servicing
244 Inverness Center Dr. Ste. 200
Birmingham, Alabama 35242
(205) 970-2233

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon the following using the CM/ECF System, on November 3, 2016, to-wit:

Richard D. Shinbaum  
Shinbaum & Campbell  
P.O. Box 201  
Montgomery, AL 36101

Sabrina L. McKinney [Acting]  
P.O. Box 173  
Montgomery, AL 36101

And by United States Mail, postage prepaid and properly addressed to:

Wilson Williams, Jr.  
Melissa Gray  
2204 Kinsbury Dr  
Montgomery, AL 36106

By: /s/ Evan Eberhardt  
      Evan Eberhardt

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

IN RE:

WILSON WILLIAMS, JR.

Debtor(s)

CHAPTER 13
CASE NO. 15-32169

### AFFIDAVIT FOR MOTION FOR RELIEF FROM STAY

I am _Brian Gaske_, a _Assistant Vice President_ of Fay Servicing, servicing agent for First Guaranty Mortgage Corporation ("Fay Servicing") and as such, I have obtained personal knowledge of the events described below through my review of business records during the normal course of business. I am familiar with the account Wilson Williams, Jr. ("Borrower(s)"), designated as Fay Servicing, Loan No. xxxxxx1400.

That Borrower(s), on September 29, 2014, executed and delivered to Nations Lending Corporation, a Corporation, a note in the principal amount of $143,355.00. Said note was, and continues to be, secured by a mortgage on certain real estate located at 2204 Kingsbury Dr., Montgomery, AL 36106.

That there is currently due and owing Fay Servicing on Loan Number xxxxx1400, the principal balance of $141,705.80, plus accrued interest and late fees. The loan is currently post-petition due since February, 2016, with a total arrearage of $10,306.26 (February 2016 – September 2016 at $1,007.98 each and October 2016 – November 2016 at $1,121.21 each).

STATE OF _Texas_     )
COUNTY OF _Denton_   )

The foregoing instrument was acknowledged and sworn before me _Kelza G. Goss_ this _2nd_ day of _November_, 2016, by _Brian Gaske_, as an _Assistant Vice President_ of Fay Servicing, who is Personally known to me.

NOTARY PUBLIC
My Comm Exp: _October 17, 2018_

Kelza G. Goss
Notary Public, State of Texas
My Commission Expires:
October 17, 2018

# NOTE

Multistate

September 29, 2014  
[Date]

INDEPENDENCE,  
[City]

Ohio  
[State]

2204 Kingsbury Dr, Montgomery, AL 36106  
[Property Address]

1. **PARTIES**

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means **Nations Lending Corporation, a Corporation**

and its successors and assigns.

2. **BORROWER'S PROMISE TO PAY; INTEREST**

In return for a loan received from Lender, Borrower promises to pay the principal sum of **ONE HUNDRED FORTY THREE THOUSAND THREE HUNDRED FIFTY FIVE AND NO/100**************************** Dollars (U.S. $143,355.00          ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of **FOUR AND THREE-FOURTHS**          percent ( 4.750 %      ) per year until the full amount of principal has been paid.

3. **PROMISE TO PAY SECURED**

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

4. **MANNER OF PAYMENT**

   (A) **Time**

   Borrower shall make a payment of principal and interest to Lender on the 1st       day of each month beginning on **November 1, 2014**.        Any principal and interest remaining on the 1st       day of **October, 2044**       will be due on that date, which is called the "Maturity Date."

   (B) **Place**

   Payment shall be made at **4 Summit Park Drive, Suite 200  
   Independence, OH 44131**

   or at such place as Lender may designate in writing by notice to Borrower.

   (C) **Amount**

   Each monthly payment of principal and interest will be in the amount of U.S. $747.81.           This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

   (D) **Allonge to this Note for payment adjustments**

   If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note.  
   [Check applicable box]  
   ☐ Graduated Payment Allonge       ☐ Growing Equity Allonge  
   ☐ Other [specify]

5. **BORROWER'S RIGHT TO PREPAY**

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

6. **BORROWER'S FAILURE TO PAY**

   (A) **Late Charge for Overdue Payments**

   If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of 15       calendar days after the payment is due, Lender may collect a late charge in the amount of **FOUR**              percent ( 4.000 %        ) of the overdue amount of each payment. **LATE CHARGE WILL NOT BE LESS THAN $18.00 OR GREATER THAN $100.00.**

   (B) **Default**

   If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

Initials: *W-W*

FHA Multistate Fixed Rate Note - 10/95  
Ellie Mae, Inc.

Page 1 of 2

P8700NOT  0408  
P8700NOT  
09/29/2014 10:11 AM PST

(C) **Payment of Costs and Expenses**
   If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

7. **WAIVERS**
   Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

8. **GIVING OF NOTICES**
   Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.
   Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

9. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**
   If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

   BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

**CAUTION -- IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

_/s/ Wilson Williams Jr_     9/29/14 (Seal)
WILSON WILLIAMS JR             DATE

FHA Multistate Fixed Rate Note - 10/95
Ellie Mae, Inc.
Page 2 of 2
Initials: W-W
P8700NOT 0408
P8700NOT
09/29/2014 10:11 AM PST

Case 15-32169   Doc 59   Filed 11/03/16   Entered 11/03/16 12:34:11   Desc Main
Document   Page 5 of 13

## ALLONGE TO NOTE

ALLONGE TO NOTE DATED 09/29/2014 IN THE AMOUNT OF $143,355.00

IN FAVOR OF Nations Lending Corporation, a Corporation

AND EXECUTED BY:

Wilson Williams Jr
2204 Kingsbury Dr
Montgomery, AL 36106

PAY TO THE ORDER OF:

First Guaranty Mortgage Corporation
1900 Gallows Rd., Suite 800
Tysons Corner, VA 22182

WITHOUT RECOURSE

BY _____*[signature]*_____
WILLIAM L. OSBORNE, JR.

TITLE: President
Nations Lending Corporation, A Corporation
4 Summit Park Drive Suite 200
Independence, OH 44131

When recorded, return to:
Nations Lending Corporation
Attn: Final Document Department
4 Summit Park Drive, Suite 200
Independence, OH 44131

This instrument was prepared by:
Cheryl Lieber
Nations Lending Corporation
4 Summit Park Drive, Suite 200
Independence, OH 44131

Title Order No.: 14-425
Escrow No.: 14-0978
LOAN #: 300814087606

[Space Above This Line For Recording Data]

**State of Alabama**                    **MORTGAGE**

THIS MORTGAGE ("Security Instrument") is given on **September 29, 2014**.    The Grantor is
**WILSON WILLIAMS JR AND MELISSA GRAY, HUSBAND AND WIFE**

("Borrower").
"**MERS**" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of PO Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**Nations Lending Corporation, a Corporation**

("Lender") is organized and existing under the laws of **Ohio**,
and has an address of **4 Summit Park Drive, Suite 200, Independence, OH 44131**.

Borrower owes Lender the principal sum of **ONE HUNDRED FORTY THREE THOUSAND THREE HUNDRED FIFTY FIVE AND NO/100**************************************** Dollars (U.S. **$143,355.00**     ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **October 1, 2044**. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably mortgages, grants and conveys to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in **Montgomery**      County, Alabama:
**SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS "EXHIBIT A".**
**APN #: 10-08 27-4-000-008.000**

which has the address of **2204 Kingsbury Dr, Montgomery**,
[Street, City],
Alabama **36106**         ("Property Address");
[Zip Code]

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

FHA Alabama Mortgage - 4/96
Ellie Mae, Inc.                            Page 1 of 5                    Initials: W.W. MG
ALEFHADE 1212
ALEFHADE
09/29/2014 10:11 AM PST

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:
UNIFORM COVENANTS.

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 **et seq.** and implementing regulations, 24 CFR Part 1024, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

FHA Alabama Mortgage - 4/96
Ellie Mae, Inc.  Page 2 of 5  Initials: _____
ALEFHADE 1212
ALEFHADE
09/29/2014 10:11 AM PST

Case 15-32169  Doc 59  Filed 11/03/16  Entered 11/03/16 12:34:11  Desc Main
Document  Page 8 of 13

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**
   (a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:
   (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or
   (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.
   (b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:
   (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and
   (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.
   (c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.
   (d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.
   (e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is

FHA Alabama Mortgage - 4/96
Ellie Mae, Inc.
Page 3 of 5
Initials: _W.W._ _M.G._
ALEFHADE 1212
ALEFHADE
09/29/2014 10:11 AM PST

Case 15-32169    Doc 59    Filed 11/03/16    Entered 11/03/16 12:34:11    Desc Main
Document    Page 9 of 13

not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall give a copy of a notice to Borrower in the manner provided in paragraph 13. Lender shall publish the notice of sale once a week for three consecutive weeks in a newspaper published in Montgomery County, Alabama, and thereupon shall sell the Property to the highest bidder at public auction at the front door of the County Courthouse of this County. Lender shall deliver to the purchaser Lender's deed conveying the Property. Lender or its designee may purchase the Property at any sale. Borrower covenants and agrees that the proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.**

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

**21. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

☐ Condominium Rider ☐ Growing Equity Rider ☐ Planned Unit Development Rider
☐ Graduated Payment Rider ☐ Other(s) [specify]

FHA Alabama Mortgage - 4/96
Ellie Mae, Inc.

Page 4 of 5

Initials: _WW MO_
ALEFHADE 1212
ALEFHADE
09/29/2014 10:11 AM PST

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____

_____

/s/ Wilson Williams Jr  9/29/14 (Seal)
WILSON WILLIAMS JR          DATE

/s/ Melissa Gray  9/29/14 (Seal)
MELISSA GRAY                DATE

State of ALABAMA          )
County of MONTGOMERY      )

On this 29th day of SEPTEMBER, 2014, I, **Lanier Branch**, a Notary Public in and for said county and in said state, hereby certify that WILSON WILLIAMS JR AND MELISSA GRAY, whose name(s) is/are signed to the foregoing conveyance, and who is/are known to me, acknowledged before me that, being informed of the contents of the conveyance, he/she/they executed the same voluntarily and as his/her/their act on the day the same bears date.

Given under my hand and seal of office this 29th day of SEPTEMBER, 2014.

Notary Public /s/

My Commission Expires: _____

> LANIER BRANCH
> Notary Public
> State of Alabama
> MY COMMISSION EXPIRES: MAY 4, 2016

FHA Alabama Mortgage - 4/96
Ellie Mae, Inc.                Page 5 of 5                Initials: WW MG
                                                          ALEFHADE 1212
                                                          ALEFHADE
                                                          09/29/2014 10:11 AM PST

EXHIBIT "A"

Lot 36, in Block S, according to the Map of Green Acres Plat No. 18-B, as the same appears of record in the Office of the Judge of Probate of Montgomery County, Alabama, in Plat Book 32, at Page 107.

The proceeds from this mortgage have been applied toward the purchase price of the above described property, and this is, therefore, a purchase money mortgage.

STATE OF ALA.
MONTGOMERY CO.
I CERTIFY THIS INSTRUMENT
WAS FILED ON
RLPY 04619 PG 0367-0372 2014 Oct 03
02:24PM
STEVEN L. REED
JUDGE OF PROBATE

| | |
|---|---|
| INDEX | $5.00 |
| REC FEE | $15.00 |
| CERT | $1.00 |
| MORTGAGE TAX | $215.10 |
| CHECK TOTAL | $236.10 |
| 228178 | Clerk: #101 03:08PM |

RLPY 04773 PAGE 0736

MERS Phone # 1-888-679-6377

STATE OF ALABAMA )

COUNTY OF MONTGOMERY )

### ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, the undersigned MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ACTING AS NOMINEE FOR NATIONS LENDING CORPORATION, A CORPORATION, ITS SUCCESSORS AND ASSIGNS (the "Assignor"), does hereby transfer, assign, set over and convey unto FIRST GUARANTY MORTGAGE CORPORATION C/O ROUNDPOINT MORTGAGE SERVICING CORPORATION, its successors, transferees, and assigns (the "Assignee") forever, all right, title and interest of said Assignor in and to that certain Mortgage executed by WILSON WILLIAMS JR. AND MELISSA GRAY, HUSBAND AND WIFE, to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ACTING AS NOMINEE FOR NATIONS LENDING CORPORATION, A CORPORATION, ITS SUCCESSORS AND ASSIGNS, dated September 29, 2014, and filed for record in RLPY 04619 PAGE 0367, in the Probate Office of Montgomery County, Alabama.

It is expressly understood and agreed that the within transfer and assignment of the said Mortgage is without warranty, representation or recourse of any kind whatsoever.

IN WITNESS WHEREOF, said Assignor has hereunto set its signature this 18 day of November, 2015.

STATE OF ALA. MONTGOMERY CO.
I CERTIFY THIS INSTRUMENT WAS FILED ON
RLPY 04773 PG 0736 2015 Dec 15 02:40PM
STEVEN L. REED
JUDGE OF PROBATE

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ACTING AS NOMINEE FOR NATIONS LENDING CORPORATION, A CORPORATION, ITS SUCCESSORS AND ASSIGNS

By: _____ Tra'Vell Brown

Its: Assistant Secretary

STATE OF NORTH CAROLINA )
COUNTY OF MECKLENBURG )

I, Truman Smith, a Notary Public in and for said County in said State, hereby certify that Tra'Vell Brown, whose name as Assistant Secretary of Mortgage Electronic Registration Systems, Inc., acting as nominee for Nations Lending Corporation, a corporation, its successors and assigns, is signed to the foregoing conveyance and who is known to me, acknowledged before me on this day that, being informed of the contents of said conveyance, he/she, as such Assistant Secretary, and with full authority, executed the same voluntarily for and as the act of said corporation.

Given under my hand this the 18 day of November, 2015.

_____
Notary Public

My Commission Expires: 8/24/2019

This instrument prepared by:
Diane Murray
Sirote & Permutt, P.C.
P. O. Box 55727
Birmingham, AL. 35255
Sirote #: 285950

TRUMAN SMITH
Notary Public, North Carolina
Mecklenburg County
My Commission Expires
8/24/2019

INDEX $5.00
REC FEE $2.50
CERT $1.00
